FILED
RICHARD W. NAGEL
CLERK OF COURT

2022 OCT 11 PM 2:44

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. |
| Plaintiff, | JUDGE |
| vs. | INDICTMENT |
| HAROLD J. McMAHAN, JR. (1), | 18 U.S.C. § 1349 |
| JONATHAN T. BROWN (2), | FORFEITURE ALLEGATION |
| and | |
| MICHAEL J. MAXWELL (3), | |
| Defendants. | |

**THE GRAND JURY CHARGES:**

**INTRODUCTION**

At times relevant to this Indictment:

1. From March 2015 through February 2019, the exact dates being unknown to the Grand Jury, the defendants, **HAROLD J. McMAHAN, JR., JONATHAN T. BROWN,** and **MICHAEL J. MAXWELL**, engaged in a conspiracy to commit mail fraud by defrauding SP Plus Corporation (doing business as SP+ Parking or SP Plus), of money that belonged to the company. The perpetrators of this scheme to defraud sought to evade SP Plus corporate policy that prohibited self-dealing by routing maintenance contracts, invoices, and payments through **MAXWELL's** company, known as "Maxed Out Customs LLC." In truth, the defendants were performing the maintenance work themselves or with the assistance of other SP Plus employees, while charging marked-up prices to SP Plus, and then splitting the proceeds among themselves.

2. By 2014, **HAROLD J. McMAHAN, JR.** was working as a Regional Vice President at SP Plus, a Delaware Corporation with a business office located in Columbus, Ohio. As part of his duties, he oversaw the operation of several parking facilities in Charleston, West Virginia. In 2014, **McMAHAN** hired his friend and associate, **JONATHAN T. BROWN**, to work for him at SP Plus. **BROWN**, however, had no prior experience in parking facility management. Within a few months of joining the company, **BROWN** was put in charge of the Charleston parking facilities that SP Plus managed on behalf of various owners and tenants.

3. At **McMAHAN's** direction, SP Plus terminated its contract with a prior vendor ("Custom Maintenance") that had provided cleaning, maintenance, and snow removal services for the Charleston parking facilities. As a stop-gap measure, **BROWN** and several hourly employees at SP Plus began performing the cleaning and maintenance work for those facilities themselves. **BROWN** wanted to continue doing this work and hoped to make extra money from SP Plus for providing those services. Company policy, however, forbid SP Plus employees from engaging in self-dealing with respect to outside vendor services.

## THE SCHEME TO DEFRAUD

4. By early 2015, **McMAHAN** and **BROWN** devised a workaround to the company's prohibition on self-dealing. **McMAHAN** and **BROWN** enlisted **BROWN's** friend and associate, **MICHAEL J. MAXWELL**, to assist them with their plan.

5. **MAXWELL** had previously incorporated a limited liability company known as "Maxed Out Customs LLC" with the Ohio Secretary of State. **McMAHAN** and **BROWN** proposed to SP Plus that Maxed Out Customs could take over the cleaning and maintenance work for the Charleston facilities. In truth, **McMAHAN, BROWN,** and **MAXWELL** were using Maxed Out Customs as a front to avoid SP Plus's prohibition on self-dealing.

6. In furtherance of the scheme to defraud, **McMAHAN** and **BROWN** helped **MAXWELL** and Maxed Out Customs obtain a "Master Maintenance Services Agreement" with SP Plus for the Charleston facilities. By March 2015, **BROWN** began creating and submitting monthly invoices on behalf of Maxed Out Customs to SP Plus at its business office in Columbus, Ohio, for cleaning, maintenance, and snow removal at the Charleston facilities. The amount of these invoices varied from location-to-location, but in a typical month, **BROWN** submitted invoices totaling between $10,000 and $15,000 for all the Charleston facilities.

7. Although the Master Maintenance Services Agreement strictly prohibited Maxed Out Customs from assigning, delegating, or subcontracting any of the work, neither **MAXWELL** nor any of his employees performed any of the work assigned. Instead, **BROWN** continued to personally perform some of the work, with the assistance of SP Plus hourly employees.

8. In furtherance of the scheme to defraud, **McMAHAN** and **BROWN**, who both had authority to approve invoices at SP Plus, ensured that the monthly invoices that **BROWN** created and submitted on behalf of Maxed Out Customs were approved and paid without incident. SP Plus employees then mailed the payments, in the form of a corporate check, to Maxed Out Customs at the address that **MAXWELL** had provided, which was in Nashport, Ohio.

9. **MAXWELL** would then deposit the payments into a checking account (Community Bank Account x0893 and/or Huntington Bank Account x2932), withdraw the money in cash, and then dole out the proceeds to himself, **BROWN**, and **McMAHAN**. **MAXWELL** kept roughly 30% of the payments for himself. He then remitted the remaining 70% of the payments to **BROWN**, in person and in cash. **BROWN**, for his part, likewise kept 30% of the total payments for himself before remitting the remaining 40% of the total payments to **McMAHAN**, again in person and in cash.

10. In furtherance of the scheme to defraud, the defendants collectively submitted roughly 333 invoices to SP Plus for cleaning, maintenance, and snow removal services related to the Charleston facilities between March 2015 and February 2019, totaling roughly $544,528.45. Those invoices led SP Plus to mail roughly 100 checks to Maxed Out Customs at its Nashport, Ohio address, totaling the same amount.

11. At no point during the conspiracy did **McMAHAN, BROWN,** or **MAXWELL** disclose to SP Plus management that **BROWN** or the other hourly employees were performing the services themselves. Likewise, at no point during the conspiracy did **McMAHAN, BROWN,** or **MAXWELL** disclose to anyone at SP Plus management that they were retaining the proceeds from the invoices and payments for themselves.

## COUNT 1
### (Conspiracy to Commit Mail Fraud)

12. Paragraphs 1 through 11 are incorporated here.

13. From March 2015 through February 2019, in the Southern District of Ohio and elsewhere, the defendants, **HAROLD J. McMAHAN, JR., JONATHAN T. BROWN,** and **MICHAEL J. MAXWELL**, knowingly combined, conspired, and agreed with each other to commit the offense of mail fraud in violation of Title 18, United States Code, Section 1341, namely: to knowingly and with the intent to defraud, devise a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and in executing such scheme, to knowingly cause to be delivered certain mail matter by the United States Postal Service and by private and commercial interstate carriers, according to the directions thereon.

**All in violation of 18 U.S.C. § 1349.**

## FORFEITURE ALLEGATION

14. The allegations of this Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America.

15. Upon conviction of the offense alleged in this Indictment, the defendants, **HAROLD J. McMAHAN, JR., JONATHAN T. BROWN,** and **MICHAEL J. MAXWELL**, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to their conspiracy to commit a violation of 18 U.S.C. § 1341, in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

16. <u>Substitute Assets</u>: If any of the forfeitable property, as a result of any act or omission of any of any of the defendants:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

   Forfeiture notice pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and Rule 32.2 of the Federal Rules of Criminal Procedure.

s/Foreperson<br>Foreperson

**KENNETH L. PARKER**
**UNITED STATES ATTORNEY**

**NOAH R. LITTON (0090479)**
**Assistant United States Attorney**